# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 14, 2016          Decided July 5, 2016

No. 15-5128

COMPETITIVE ENTERPRISE INSTITUTE,
APPELLANT

v.

OFFICE OF SCIENCE AND TECHNOLOGY POLICY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00765)

*Hans F. Bader* argued the cause for appellant. With him on the briefs was *Sam Kazman*.

*KatieLynn Townsend* argued the cause for amici curiae. With her on the brief were *Bruce D. Brown*, *Peter Scheer*, *Jonathan D. Hart*, *David McCraw*, *Barbara L. Camens*, *James Cregan*, *Charles D. Tobin*, and *Michael Kovaka*.

*Daniel Tenny*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Vincent H. Cohen, Jr.*, Acting U.S. Attorney at the time the brief was filed, and *Matthew M. Collette*, Attorney.

2

Before: SRINIVASAN, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

Concurring opinion filed by *Circuit Judge* SRINIVASAN.

SENTELLE, *Senior Circuit Judge*: Competitive Enterprise Institute appeals from a judgment of the district court dismissing its Freedom of Information Act (FOIA) action against the Office of Science and Technology Policy (OSTP). Appellant contends that the district court improperly ruled that documents which might otherwise be government records for FOIA purposes need not be searched for or turned over to the requestor because the head of the defendant agency maintained the putative records on a private email account in his name at a site other than the government email site which the agency had searched. Because we agree with plaintiff-appellant that an agency cannot shield its records from search or disclosure under FOIA by the expedient of storing them in a private email account controlled by the agency head, we reverse the dismissal and remand the case for further proceedings.

## BACKGROUND

FOIA requires, subject to certain statutory exceptions, that each federal agency upon a proper request for records "shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The statutory duty of disclosure imposed upon the agencies includes the duty to "search for the records in electronic form or format . . . ." 5 U.S.C. § 552(a)(3)(C). Appellant Competitive Enterprise Institute (CEI), in October of 2013, submitted a FOIA request for "all policy/OSTP-related email sent to or from jholdren@whrc.org (including as cc: or

bcc:).” J.A. at 35. The email address set forth in the FOIA request is a nonofficial account maintained by John Holdren, Director of OSTP, at Woods Hole Research Center. CEI had learned from a Vaughn Index in another, earlier FOIA litigation that the address had apparently been used for some work-related correspondence.

In February of 2014, OSTP sent a response refusing to provide records from the address on the basis that such records were "beyond the reach of FOIA" because they were in an "account" that "is under the control of the Woods Hole Research Center, a private organization." J.A. at 11. OSTP did not in its response state that it had made any attempt to search for records in that email account responsive to the FOIA request, nor has it at any time in this litigation asserted any claim to have made such a search. CEI exhausted administrative appeals and brought the present litigation, seeking an injunction mandating production of "[w]ork-related emails sent to or from the account." J.A. at 23. OSTP moved under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim. OSTP argued that because the email account at issue was "not under the control of the agency," its contents were not within the agency documents required to be produced under FOIA, nor was the agency capable of conducting a search. Appellee's Br. at 1. The district court agreed and granted the 12(b)(6) motion. CEI timely appealed.

## ANALYSIS

The basic task of a court in adjudicating alleged wrongful withholdings under FOIA is framed under three Acts of Congress. The Federal Records Act of 1950, 44 U.S.C. § 2901 *et seq*., authorizes the establishment of "records management program[s]" and provides for the preservation of agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445

U.S. 136, 147 (1980). A complementary statute, the Records Disposal Act, 44 U.S.C. § 3314, provides the exclusive means for record disposal. *Id.* Yet, neither the Federal Records Act nor the Records Disposal Act contemplate a private right of action for access to or recovery of federal records. *Id.* at 150. The FOIA itself, however, establishes the relevant private right. Jurisdiction under FOIA requires "a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Id.* at 150 (quoting 5 U.S.C. § 552(a)(4)(B)). Our task, then, is to determine whether the pleadings in the present case allege these requirements sufficiently to survive a motion under Rule 12(b)(6). As applied to the present case, our attention, and that of the district court, focuses first at this stage on whether the agency's refusal to undertake a search of the records of the director's private email account amounts to a "withholding," and specifically, an "improper" one.

At each stage of this litigation, appellee has argued that "[d]ocuments on a nongovernmental email server are outside the possession or control of federal agencies, and thus beyond the scope of FOIA." Appellee's Br. at 14. In pursuing that defense, appellee repeatedly refers to the email account as being "under the control" of the Woods Hole Research Center, a private entity. *See, e.g.*, Appellee's Br. at 6, 8. Appellant has consistently challenged the logic of the proposition that the director of an agency may place his work-related records beyond the reach of FOIA for the simple expedient of using a private email account rather than the official government communications system. Although neither party is able to produce a binding precedent in this court or the Supreme Court addressing precisely the question before us, each has offered cases in some way relevant to our consideration of the issue.

The government first offers *Founding Church of Scientology of Washington, D.C., Inc. v. Regan*, 670 F.2d 1158

(D.C. Cir. 1981), for the fundamental proposition that "[t]he Freedom of Information Act empowers federal courts to compel disclosure of agency records improperly withheld, but does not confer authority upon the courts to command agencies to acquire a possession or control of records they do not already have." *Id.* at 1163. While correct, and undoubtedly logical, *Founding Church* does little to answer the question before us. A brief comparison of the facts of that case with those at bar makes that evident. In that case, the requestor sought documents from the United States National Central Bureau (USNCB) of the International Police Organization (Interpol) previously obtained from foreign police agencies and concerning the plaintiff-organization. *Id.* at 1159. It appears that there was no dispute that the documents were in the possession of Interpol, not an agency of the United States. It also is unsurprising that we reversed a district court order directing the federal government to obtain records from the international organization. This does nothing to advise us as to whether an agency must turn over email records housed in an email account of the agency head, but at a nongovernmental domain.

This court in *Founding Church*, as did the government in its brief, relied on *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980). As the government urges in its brief, the *Kissinger* decision "recognized that the FOIA does not 'furnish congressional intent to permit private actions to recover records' that are not within the agency's 'possession or control.'" Appellee's Br. at 15 (quoting *Kissinger*, 445 U.S. at 137-38, 155). Again, the quotation from the Supreme Court in *Kissinger* obviously states the law, but is not controlling on the facts before us. The records in *Kissinger*, the Secretary of State's notes concerning official telephone conversations, were no longer in the custody of the Department of State or under the control of Secretary Kissinger. *See* 445 U.S. at 155. The documents in question had been donated to the Library of

Congress, which was not a party to the action.  *Id.* at 154-55.
The Supreme Court unsurprisingly ruled that the Department did
not have to produce what it did not have.  *See id.* at 158.  Again,
that does not speak to the question before us.

Like our separately concurring colleague, we believe that
*Kissinger* is distinguishable.  Indeed, we may believe this more
strongly than our colleague.  As our colleague rightly observes,
in *Kissinger*, "the Secretary not only was 'holding the
documents . . . at the time the requests were received,' but he
was 'holding the documents under *a claim of right*.'"
Concurring Op. at 4 (quoting *Kissinger*, 445 U.S. at 155)
(emphasis in concurrence).  While this accurately states one
difference from the present case, we think it is not the only, or
even the most compelling difference.

Not only did the Secretary hold the document under a claim
of right, it appears that the Department had effectively ceded the
documents to him.  As the Supreme Court relates:

> The second FOIA request was filed on December 28
> and 29, 1976, by the Military Audit Project (MAP) after
> Kissinger publicly announced the gift of his telephone notes
> to the United States and their placement in the Library of
> Congress.  The MAP request, filed with the Department of
> State, sought records of all Kissinger's conversations made
> while Secretary of State and National Security Adviser.  On
> January 18, 1977, the Legal Adviser of the Department of
> State denied the request on two grounds.  First, *he found
> that the notes were not agency records.*  Second, *the deposit
> of the notes with the Library of Congress prior to the
> request terminated the Department's custody and control.*
> The denial was affirmed on administrative appeal.
>
> The third FOIA request was filed on January 13, 1977,
> by the Reporters Committee for Freedom of the Press

> (RCFP), the American Historical Association, the American Political Science Association, and a number of other journalists (collectively referred to as the RCFP requesters). This request also sought production of the telephone notes made by Kissinger both while he was National Security Adviser and Secretary of State. The request was denied for the same reasons given to the MAP requesters.

*Kissinger*, 445 U.S. at 143-44 (emphasis added).

There is no assertion by the agency before us that it has ceded the relevant records to the Director. Indeed, if it is ultimately determined that there are agency records in the requested data, it seems unlikely that the agency could legally cede the records under the Federal Records Act and the Records Disposal Act. However, we need not on the present record determine whether there are agency records among the data sought, nor the legality of ceding such records. It is sufficient to conclude, as our colleague agrees, that *Kissinger* does not control the case before us.

More nearly on point is *Burka v. U.S. Department of Health and Human Services*, 87 F.3d 508 (D.C. Cir. 1996). In *Burka*, a requestor sought disclosure from the Department of Health and Human Services of data tapes and questionnaires regarding smoking habits and attitudes conducted by an agency within the Department. 87 F.3d at 510-13. As relevant here, we held in *Burka*, that the agency must search and disclose records that were not on its premises but were under its "constructive control." *Id.* at 515. This comes closer to the question before us.

More helpful still is *Ryan v. Department of Justice*, 617 F.2d 781 (D.C. Cir. 1980), in which a requestor sought documents from the Department of Justice which were within the exclusive control of the Attorney General. *Id.* at 786. The Department asserted that the documents were not within the agency since they were under the exclusive control of its head. In rejecting that argument, we concluded that there is no basis in the FOIA "to view the Attorney General as distinct from his department for FOIA purposes." *Id.* at 787. In other words, an agency always acts through its employees and officials. If one of them possesses what would otherwise be agency records, the records do not lose their agency character just because the official who possesses them takes them out the door or because he is the head of the agency.

This seems to us to be the only resolution that makes sense. If the agency head controls what would otherwise be an agency record, then it is still an agency record and still must be searched or produced. The agency's claim before us simply makes little sense. That argument relies on the proposition that the emails in question are under the control of a private entity, not the government. That private entity is Woods Hole Research Center, apparently the owner of the "whrc.org" domain where Director Holdren of the OSTP maintains the account jholdren@whrc.org. While this specific fact is not addressed in the record, it is not apparent to us that the domain where an email account is maintained controls the emails therein to the exclusion of the user, in this case Director Holdren, who maintains the account. When one receives an email from John Doe at, for example, gmail.com, and replies thereto, the replier would be likely to think that message is going to John Doe, not gmail.com. Even so here.

Further, appellee's argument is inconsistent with the purpose of FOIA. The Supreme Court has described the function of FOIA as serving "the citizens' right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation marks and citation omitted). If a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain, that purpose is hardly served. It would make as much sense to say that the department head could deprive requestors of hard-copy documents by leaving them in a file at his daughter's house and then claiming that they are under her control.

If by some means Woods Hole Research Center has lawfully acquired exclusive possession and control of agency records that were formerly in the possession of John Holdren, the government has not demonstrated this. We therefore reverse the district court's grant of dismissal in favor of the appellee, and remand the case for further proceedings consistent with this opinion.

We make clear that we are not ordering the specific disclosure of any document. It may be that OSTP has valid exemption claims, or even that no document found among the jholdren@whrc.org email falls within the definition of "agency records." However, those questions are for litigation in the district court in the first instance.

CONCLUSION

For the reasons set forth above, we reverse the judgment of dismissal entered by the district court and remand this case for further proceedings consistent with this opinion.

*So ordered.*

SRINIVASAN, *Circuit Judge*, *concurring in the judgment*: I agree with my colleagues that the judgment of dismissal entered by the district court should be reversed and the case remanded for further proceedings. The district court concluded that the agency cannot be considered to have "withheld" any emails in Holdren's private email account because that account lies outside the agency's possession or control. The court relied on the Supreme Court's decision in *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980). *Kissinger* held that an agency did not "withhold" certain records that had been taken from the agency's premises by the agency head, because, at the time the FOIA requests were filed, the records lay beyond the agency's possession or control.

This case resembles *Kissinger* in certain respects in that both cases concern documents held by a current agency official in a location outside the agency's ordinary domain. But while *Kissinger* held that the FOIA requests in that case could not proceed, I, like my colleagues, do not read *Kissinger* to require a dismissal of the FOIA request in this case, at least at this point in the proceedings. I write separately to set out my understanding of the reasons *Kissinger* does not control, and because I approach the issue here in a somewhat different fashion than do my colleagues.

In assessing whether OSTP can be considered to have "withheld" emails located in Holdren's private email account, we begin with an important—and as-yet untested—assumption: that the email account, although a non-governmental account, contains "agency records" within the meaning of FOIA. 5 U.S.C. § 552(a)(4)(B). The district court did not address whether Holdren's private account contains agency records. *See* 82 F.3d 228, 232 n.4 (D.D.C. 2015). The court instead assumed that Holdren possesses agency records in his private account, but held that, regardless, the *agency* is not withholding those records. In

*Kissinger*, the Supreme Court likewise assumed that the requested documents qualified as "agency records," *see* 445 U.S. at 147, but concluded that the State Department had not "withheld" those records.

*Kissinger* arose in a posture resembling this case in another notable respect: there, as here, the (assumed) agency records were being held by a current agency official. The FOIA requests in *Kissinger* "were filed while Kissinger was Secretary of State." 445 U.S. at 142. Neither *Kissinger* nor this case therefore involves records held by someone having no present affiliation with the agency at the time of the FOIA request (which, according to *Kissinger*, is generally the relevant time for assessing whether an agency "withholds" records, *see id.* at 155 n.9). And the *Kissinger* Court treated the Secretary as holding the requested records at the time of the FOIA requests even though, by then, he had donated the documents to the Library of Congress. Because Secretary Kissinger continued to "retain[] unrestricted access to the collection," *id.* at 141, the Court considered him (along with the "Library of Congress as his donee") to be "holding the documents." *Id.* at 155.

Both here and in *Kissinger*, then, at the time of the FOIA requests, a current agency official held (assumed) agency records in a location outside the agency's ordinary domain. The question we confront is, in those circumstances, when is the *agency* itself appropriately considered to hold the records for purposes of its disclosure obligations under FOIA?

One possible answer would be that, because an agency acts only through individuals, an agency holds documents whenever an official holds the documents. *Kissinger*, however, forecloses that understanding. There, even though the Court considered Secretary Kissinger to be "holding the

documents," the Court held that the "State Department cannot be said to have had possession or control of the documents at the time the requests were received." *Id.* The Court thus drew a divide between an agency and its official, at least in circumstances in which the agency—as opposed to its official—lacks "possession or control" over requested documents, a "prerequisite to FOIA disclosure duties." *Id.* at 152.

But does *Kissinger* mean that, any time an agency official possesses an agency record outside the agency's physical (or, in the case of email, virtual) domain, the agency itself lacks the requisite possession or control to trigger FOIA disclosure obligations? I do not think so. As a general matter, it seems appropriate to start from a premise that an agency possesses and controls its own records. That premise may yield if files have been lost or deleted, or if they are held by a person unaffiliated with the agency at the time of the request. But when a current official holds agency records, we ordinarily would expect the agency to control the documents for purposes of responding to a FOIA request.

Consider, for instance, a circumstance in which an official takes the sole available copy of an agency record home one evening to review and inadvertently leaves it there the next day. If a FOIA request were received while the document happened to remain in the official's residence, the agency presumably could not simply bury its head in the sand and disclaim any obligation to disclose the document on the rationale that the official possesses it in a location beyond the agency's control. Rather, we assume the official would voluntarily retrieve the document to facilitate its inclusion in the agency's FOIA disclosure.

*Kissinger* differed from that sort of situation because, there, the Secretary not only was "holding the documents . . . at the time the requests were received," but he was "holding the documents *under a claim of right*." *Id.* at 155 (emphasis added). Secretary Kissinger had obtained an opinion from the State Department's Legal Adviser that the records in question were his personal papers. He then removed the records from his office and deeded them to the Library of Congress. In addition, he later refused the Government Archivist's request for a return of the papers. *See id.* at 144, 155. Those facts, the Court concluded, made "it apparent" that Secretary Kissinger held the documents "under a claim of right"—i.e., an assertion of possession and control over the documents inconsistent with the assumption of agency control. *Id.* at 155. "Under these circumstances," the Court held, "the State Department cannot be said to have had possession or control of the documents." *Id.*

The holding in *Kissinger* presumably would also apply in a situation in which an official wrongfully removes documents from an agency, stores them in his house, and refuses to return them on the grounds that they are his personal papers. *See ante* at 9. The agency might choose to take disciplinary action against the official or pursue an administrative remedy under the Federal Records Act, 44 U.S.C. § 2901, and Records Disposal Act, 44 U.S.C. § 3312. But the agency's failure to search those documents would not constitute a "withholding" under FOIA, because the agency could not be said to retain control over the documents while the official holds them in his house under a claim of right.

In this case, there is no comparable indication (at least at this stage) that Holdren holds any agency records in his private email account under a claim of right. To be sure, he retains possession over the contents of the account. But there

is no indication he has asserted control over agency records in the account in a manner inconsistent with agency control. As far as we know, Holdren has not refused an agency request for access to the account, transferred custody over records in the account to a third party, or otherwise taken action affirming that its contents belong solely to him in his personal capacity, to the exclusion of agency control. It's true that he forwarded a number of messages from his private account to his government account, in accordance with a previous agency rule calling for employees to transfer any work-related messages from private email accounts to official accounts. (In fact, the agency produced over 110 pages of such records from Holdren's government account in response to the FOIA request. *See* J.A. 112, 151-52.) But that action by Holdren did not connote a claim of right over any undisclosed agency records that may remain in his private account. As a result, I see no basis for concluding that Holdren holds any agency records in his private email account under a claim of right, such that the agency would lack the requisite control over the records for a withholding.

On remand, the agency is free to argue that the requested documents are not "agency records" or that they fall within certain exemptions. *See ante* at 9. But the agency should also be free to present additional facts that would make it apparent that Holdren is holding the emails in his private account under a claim of right. I would conclude here only that a current official's mere possession of assumed agency records in a (physical or virtual) location beyond the agency's ordinary domain, in and of itself, does not mean that the agency lacks the control necessary for a withholding.